**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| TANYA ZELINKA, | ) CASE NO. 1:23-CV-00506-CEH |
| | ) |
| Plaintiff, | ) JUDGE CARMEN E. HENDERSON |
| | ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) MEMORANDUM OF OPINION & |
| | ) ORDER |
| Defendant, | ) |
| | ) |

**I. Introduction**

Plaintiff, Tanya Zelinka ("Zelinka" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 12). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding and DISMISSES Plaintiff's Complaint.

**II. Procedural History**

On March 24 and 25, 2021, Claimant filed applications for DIB and SSI, alleging a disability onset date of July 4, 2019. (ECF No. 7, PageID #: 45). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 11, 2022, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). On May 25, 2022, the ALJ issued a written decision finding Claimant was not disabled. (*Id.* at PageID #: 45-59). The ALJ's decision

1

became final on January 9, 2023, when the Appeals Council declined further review. (*Id.* at PageID #: 31).

On March 13, 2023, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 10, 13, 14). Claimant asserts the following assignments of error:

> (1) The ALJ's Step Three finding is not supported by substantial evidence because the ALJ did not consider whether Plaintiff's severe spasmodic dysphonia and laryngeal spasms met or medically equaled Listing 2.09, and the evidence raised a "substantial question" over whether this Listing was met or medically equaled;
>
> (2) the ALJ's Residual Functional Capacity ("RFC") finding is not supported by substantial evidence because the ALJ did not comply with the revised regulation for evaluating medical opinion evidence when considering the opinion of otolaryngologist Paul Bryson, M.D.; and
>
> (3) the ALJ's RFC finding is not supported by substantial evidence because the ALJ's evaluation of Plaintiff's symptom allegations did not comply with Social Security Ruling ("SSR") 16-3p or apposite case law, i.e., the ALJ's decision did not provide any explanation for why Plaintiff's allegations concerning her loss of speech were discounted.

(ECF No. 10 at 1).

### III. Background

#### A. Relevant Hearing Testimony

While the ALJ considered Claimant's allegations regarding her multiple impairments, only his treatment of her vocal impairments and symptoms is at issue in this appeal. The ALJ questioned Claimant regarding her vocal impairments, asking if her doctor was correct that she could not talk at all for two weeks after receiving Botox injections as treatment. (ECF No. 7, PageID #: 77). Claimant replied that "[i]t takes time for it to do like – you know – gradually turn it into a voice because it starts out very, not raspy, but more of a feathery kind of – it's very soft and then it turns into a voice, so yeah, I'm way past that." (*Id.*). Later in the hearing, in response to questioning by

counsel regarding whether her symptoms got worse as she used her voice more, Claimant stated:

> Oh, yeah, definitely, and it seems like in the beginning, they'll say, you know, keep using your voice as much as you can, you know, when you get the injection, and – and they'll say, you know, just keep trying to – to use your voice as it – as it starts to come in, and you think to yourself, well, there's no voice there, but no, eventually there is an actual voice, and it will actually turn into one, and this is a good voice for – for today. It is actually very good. I – I don't always get to finish every single word what I'm trying to speak, but I will always try to reiterate it.

(*Id.* at PageID #: 85-86).

### B. Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms he found relevant to his conclusions:

> Physically, the claimant's migraine headaches have significantly restricted her ability to sustain work activity in the past, but the claimant's own reports in the medical record indicate inconsistencies with medical care due to initial insurance issues that affected her compliance with medication in 2017 (see historically Exh. 1F, pp. 1, 11-12; 7F; SSR 16-3p). By December 2019, the claimant asked for and was able to establish medical care with Dr. Kall, who has been managing her migraines effectively with Amitriptyline (reduction in frequency of headaches from almost daily to one to two per month) and her overall health for most of this adjudicating period (Exh. 1F, p. 69; see Exhs. 10F; 11F; 12F; SSR 19-4p).
>
> Additionally, the claimant has been conservatively-treated with Gabapentin for her chronic pain issues in her neck and custom orthotic shoes for her bilateral foot impairments through the date of this decision, which establish more restrictive exertional limitations than the State Agency medical consultants opined through the reconsideration determination level because the evidence suggests weights greater than the customary light restrictions would impose sustainability issues on her ability to lift, carry, push, pull, stand, and walk on a sustained, regular, and continuing basis during the current adjudicating period (Exhs. 3A; 4A; 7A; 8A; *but see* Exhs. 1F; 10F; 11F).
>
> The undersigned finds the claimant's obesity with a body mass index in the 30s, but she has been able to ascertain the nature of her weight gain to be related to side effects of her pain medication (Exh. 10F). She has been working with Dr. Kall to come up with a therapeutic regimen for her chronic pain issues, including asking for a referral for physical therapy that her medical insurance would cover, to help her manage her weight (Exh. 10F).
>
> Although the claimant has received a Botox injection in her vocal cords to treat her

3

idiopathic adductor spasmodic dysphonia and laryngeal spasm under the care of otolaryngologist Paul Bryson, M.D., every five to six months, the claimant has not experienced any work-related limitations greater than those set forth in this Finding (Exh. 14F; *see also* Exh. 12F, pp. 15, 26; *see generally* Exh. 12F).

(ECF No. 7, PageID #: 54-55).

### C. Opinion Evidence at Issue

The opinion of otolaryngologist Paul Bryson is at issue on appeal. Bryson completed a "Spasmodic Dysphonia Questionnaire" in which he indicated that Claimant had been diagnosed with adductor spasmodic dysphonia, laryngeal spasm, and hoarseness. (ECF No. 7, PageID #: 709). Claimant's prognosis was stable and her symptoms were "hoarseness, voice is choppy, strained, sounds strangled." (*Id.*). Every five to six months, Claimant developed loss of speech and received Botox treatments. (*Id.*). Bryson indicated that Claimant would "sometimes need to rest her voice/refrain from speaking at unpredictable intervals during a work shift." (*Id.* at PageID #: 710). Concerning Claimant's work ability, Bryson indicated she was "able to retain functional ability to work in a competitive environment. She would be compromised to work 2 week[s] after injections for Botox by having no voice." (*Id*).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The claimant has not engaged in substantial gainful activity since July 4, 2019, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: migraine, cervical spondylosis, obesity, adductor spasmodic dysphonia, laryngeal spasm, unspecified anxiety disorder, and attention-deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. She can occasionally climb ladders, ropes, or scaffolds; occasionally crawl; cannot tolerate a loud or very loud work environment; cannot perform work tasks that require use of the telephone or more than occasional speaking; must avoid all exposure to hazards such as unprotected heights, moving machinery, and commercial driving; can perform short-cycle instructions in a routine work setting with minor changes; and can respond appropriately to supervisors, coworkers, and work situations if the tasks performed are goal-oriented, but not at a production rate pace.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 4, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 7, PageID #: 47-48, 53, 56-58).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

6

claimant has the residual functional capacity to perform available work in the national economy. *Id.*

    **C. Discussion**

Claimant raises three issues on appeal, arguing that (1) the ALJ failed to consider whether Claimant's severe spasmodic dysphonia and laryngeal spasms met or medically equaled Listing 2.09; (2) the ALJ erred in his evaluation of the opinion of Paul Bryson, M.D.; and (3) the ALJ did not comply with SSR 16-3p in his evaluation of Claimant's symptom allegations. (ECF No. 10 at 1).

    **1. The ALJ did not err by failing to consider Listing 2.09.**

Claimant argues that she is "entitled to judicial relief because the evidence of record raised a 'substantial question' over whether Listing 2.09 was met or medically equaled in her case." (ECF No. 10 at 12). Claimant asserts that her "spasmodic dysphonia and laryngeal spasms caused a loss of speech with inability to produce speech that can be heard and sustained." (*Id.* at 14). She argues the ALJ's "RFC finding that renders her mute for two-thirds of a workday raises a 'substantial question' over whether she can sustain speech, and that the ALJ probably would have awarded Plaintiff's applications had he considered Listing 2.09 at Step Three." (*Id.*).

The Commissioner responds that "[a]lthough the ALJ did not specifically discuss Listing 2.09, it was not error because there is no substantial question as to whether that Listing was met." (ECF No. 13 at 12). The Commissioner asserts that while the record documents the history of Claimant's spasmodic dysphonia, "no medical source other than a speech language pathologist noted any vocal disturbance on examination and he only did so on the dates of the [Botox] injections themselves." (*Id.* at 12-13). Further, the observations by the speech language pathologist "were made on the dates of Plaintiff's Botox injections, [and] do not indicate an *inability* to

produce speech by any means, and were not reproduced by any other medical source." (*Id.* at 13-14). The Commissioner argues that "there is nothing in the record indicating Plaintiff's dysphonia could not be accommodated by, for example, a mechanical or electronic speech device." (*Id.* at 15).

Claimant replies that because the ALJ did not consider Listing 2.09, the Commissioner's argument "is entirely impermissible *post hoc* rationale in the absence of any consideration by the ALJ." (ECF No. 14 at 3). Claimant argues that the treatment notes cited by the Commissioner "are of limited relevance because the notes indicate that the only medical conditions assessed during those visits were chronic pain, weight gain, ADHD, and depression." (*Id.*). Additionally, Claimant argues that "Listing 2.09 does not require a showing that an individual has a *total* inability to produce speech" and her "counsel could not find any regulatory guidance or case law to support the assertion that a claimant cannot meet or medically equal Listing 2.09 unless her record contains evidence that she attempted to use an electronic speech device to assist with speech." (*Id.* at 4).

> An ALJ should discuss a listing where the record raises a substantial question concerning whether the claimant could meet or equal the listing. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). To show that an ALJ committed reversible error by failing to consider a listing, a claimant must point to specific evidence demonstrating that he could reasonably meet or equal every requirement of the listing. *Id.* at 432-33.

*Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *2 (6th Cir. Dec. 8, 2022). Here, the ALJ did not consider Listing 2.09 so the relevant question is whether Claimant has pointed to specific evidence demonstrating that she could reasonably meet or equal the requirements of that listing. Claimant has failed to meet that burden.

Listing 2.09 applies to "[l]oss of speech due to any cause, with the inability to produce by any means speech that can be heard, understood, or sustained." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §2.09. Pursuant to the regulations, "[i]n evaluating the loss of speech, the ability to produce

8

speech by any means includes the use of mechanical or electronic devices that improve voice or articulation." *Id.* at §2.00(D). As the Commissioner argues, none of the records Claimant relies on indicate an *inability* to produce speech *by any means* for a period long enough to establish disability. (*See* ECF No. 7, PageID #: 706 (describing voice as "extremely spastic and interrupted"); *id.* at PageID #: 508, 512 (denying hoarseness or voice changes); *id.* at 572 (experienced a "soft or breathy voice" for two weeks following injection)). Thus, Claimant has not shown that she could reasonably meet or equal Listing 2.09 such that the ALJ did not err in failing to consider this listing.

**2. The ALJ did not err in his consideration of Dr. Bryson's opinion.**

Claimant next argues that the ALJ erred in his consideration of Dr. Bryson's opinion.

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). For claims filed after March 27, 2017, the regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." *Id.* at § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to

support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c).

Claimant argues that "the ALJ's consideration of the required supportability and consistency factors in relation to Dr. Bryson's medical opinion is not supported by substantial evidence." (ECF No. 10 at 15). Claimant asserts that "the ALJ never articulated whether or not he found Dr. Bryson's opinion to be persuasive as was his duty;" never considered the supportability factor; and "failed to identify any actual inconsistency between Dr. Bryson's opinion and the underlying evidence." (*Id.* at 17-18). Claimant argues these errors were harmful because "finding Dr. Bryson's opinion to be persuasive would result in Plaintiff being absent 20 days per year," which she argues would be work preclusive pursuant to the vocational expert's testimony. (*Id.* at 18).

The Commissioner argues that "[a]lthough the ALJ's conclusion could undoubtedly have been better articulated, it is reasonably apparent on review that the ALJ found that Dr. Bryson's opinion was not persuasive, at least to the extent it could be read as finding Plaintiff to have disabling speech-related limitations." (ECF No. 13 at 16). Additionally, the Commissioner argues that "[r]eading the ALJ decision as a whole and with common sense, the ALJ adequately considered the supportability and consistency factors" when concluding that Bryon's opinion "did not establish greater limitations than were adopted in the RFC." (*Id.* at 16-17).

Claimant replies that the ALJ only discussed her spasmodic dysphonia at one other point in the decision and this discussion was "nearly identical to the ALJ's discussion of Dr. Bryson's

10

opinion." (ECF No. 14 at 5). Claimant argues that "the ALJ found Dr. Bryson's opinion persuasive insofar as it supported his RFC determination, and unpersuasive insofar as it did not support his RFC determination" and "[t]his reasoning is circular with no effort made to identify any inconsistencies between the objective evidence of record and Dr. Bryson's specific functional limitations." (*Id.*).

> Concerning Bryson's opinion, the ALJ stated:
>
> The undersigned has reviewed a medical source statement from the claimant's otolaryngologist Dr. Bryson who has administered Botox injections to manage the claimant's vocal cord/laryngeal spasms every five to six months to establish a severe impairment, but this statement and other evidence in the record do not persuasively establish any longitudinal evidence that the claimant would have any disabling effects from her vocal cord issues that would affect her ability to sustain work activity on a regular and continuing basis within the scope of the residual functional capacity assessment during the current adjudicating period (Exh. 14F; see generally Exhs. 3A; 4A; 7A; 8A; 1F; 10F; 11F; 12F; 16F).

(ECF No. 7, PageID #: 56).

While this explanation is brief and does not explicitly indicate how persuasive the ALJ found Bryson's opinion, the Court agrees with the Commissioner that this statement shows that the ALJ considered the supportability and consistency factors and found the opinion unpersuasive. The ALJ noted the lack of evidence to support the opinion within Bryson's statement itself, which addresses supportability. (*Id.*). As to consistency, the ALJ indicated that there was not evidence in the record to support limitations beyond those included in the RFC. (*Id.*). The cited medical records indicate that while Claimant complained of a lost voice for a few days in August 2017, she later denied "hoarseness/voice change" at subsequent visits through December 2019. (*Id.* at PageID #: 416, 419, 423, 426, 433, 436, 484). Additionally, the records indicated that Claimant had "good benefit" from the injections and a "[g]reat voice for 5 months." (*Id.* at PageID #: 691, 700).

The ALJ's decision makes clear that he found Bryson's opinion unsupported by and

11

inconsistent with the record. Substantial evidence supports the ALJ's conclusion and the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).

### 3. The ALJ did not err in his treatment of Claimant's symptom allegations.

Claimant argues that "the ALJ's too vague assessment of her loss of speech symptom allegations does not permit meaningful judicial review." (ECF No. 10 at 19). Claimant asserts that she "does not know *why* the ALJ discounted her statements regarding the intensity and persistence of her loss of speech symptoms" because while he summarized her allegations, stated he found them incredible, and provided a brief summary of her treatment, he "never actually discussed any of the prescribed factors in a manner that explained *why* he found [her] allegations to be incredible." (*Id.* at 21). Accordingly, Claimant argues the ALJ failed to build an accurate and logical bridge between the evidence and the resulting decision. (*Id.* at 22).

The Commissioner responds that the ALJ properly considered Claimant's activities of daily living, the medical evidence, and the medical opinions in concluding that her allegations were not fully supported by or consistent with the evidence. (ECF No. 13 at 19). The Commissioner argues that "rather than discounting [Claimant's] allegations outright, the ALJ incorporated substantial limitations in the RFC," finding that Claimant "could not perform work tasks that required the use of a telephone or more than occasional speaking." (*Id.* at 19). The Commissioner argues that while "the ALJ decision would have benefitted from greater verbiage on the issue of Plaintiff's loss of speech," it is unsurprising that the ALJ focused on the other impairments since "Plaintiff did not even mention her loss of speech when initially asked by the ALJ about what limited her ability to work." (*Id.* at 20).

In reply, Claimant "maintains that she does not know *why* the ALJ discounted her

statements regarding the intensity and persistence of her loss of speech symptoms" and, while she does not dispute that the ALJ "evaluated some of [her] activities of daily living when determining whether her severe mental health impairments impacted her ability to interact with others," he "never considered her activities of daily living in relation to her speech difficulties." (ECF No. 14 at 6).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. § 404.1529(c); SSR 16-3p, 2017 WL 5180304.

Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). SSR 16-3p states:

> [I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

13

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, in setting forth the RFC, the ALJ found that Claimant "cannot perform work tasks that require use of a telephone or more than occasional speaking." (ECF No. 7, PageID #: 53). The ALJ indicated:

> The claimant has reported that her migraine headaches are the primary reason for her inability to sustain full-time work activity during the current adjudicating period. The claimant has also reported exacerbating issues with anxiety with vocal spasms, chronic musculoskeletal pain issues in her neck and her bilateral feet, and attention-deficit hyperactivity disorder during the current adjudicating period.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(*Id.* at PageID #: 54). The ALJ then explained his decision specifically regarding Claimant's vocal impairments:

> Although the claimant has received a Botox injection in her vocal cords to treat her idiopathic adductor spasmodic dysphonia and laryngeal spasm under the care of otolaryngologist Paul Bryson, M.D., every five to six months, the claimant has not

14

experienced any work-related limitations greater than those set forth in this Finding (Exh. 14F; *see also* Exh. 12F, pp. 15, 26; *see generally* Exh. 12F).

(*Id.* at PageID #: 55).

Claimant argues that the ALJ discounted her allegations that "her spasmodic dysphonia and laryngeal spasm made it difficult to speak and her symptoms worsened the more she used her voice." (ECF No. 10 at 21). However, the Court agrees with the Commissioner that the ALJ incorporated limitations in the RFC to accommodate these allegations. Consistent with Claimant's testimony that her voice worsened the more she used it, the ALJ limited her to occasional speaking without telephone use. (*Id.* at PageID #: 53). The ALJ explained that the medical records did not warrant greater limitations. (*Id.* at PageID #: 55). The ALJ's consideration of the Botox injections also indicates that, consistent with SSR 16-3p, he considered Claimant's treatment in finding that additional limitations were not warranted. Substantial evidence supports the ALJ's decision. To the extent Claimant is arguing that her testimony should have resulted in greater limitations, she is essentially asking the Court to reweigh the evidence. However, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Because substantial evidence supports the Commissioner's decision, the Court must defer to it. *Wright*, 321 F.3d at 614.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying to Plaintiff benefits. Plaintiff's Complaint is DISMISSED.

Dated: February 20, 2024

15

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE